IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-01928-RBJ-BNB

VICKI DILLARD, and
PATRICIA EVANS,

       Plaintiffs,

v.

DEPUTY GARY GREGORY, in his official and individual capacity,
SERGEANT TOM FRANK, in his official and individual capacity,
JOHN DOES, DENVER DEPUTY SHERIFFS (4), in their official and individual capacities,
and
THE CITY AND COUNTY OF DENVER,

       Defendants.

---

## ORDER

---

    This matter is before the Court on defendants' Motion for Summary Judgment [#45]. The motion is ripe and ready for review.

### Facts and Procedural History

    This case, as well as litigation in other courts, arises out of the foreclosure and eviction of Vicki Dillard and her mother Patricia Evans from their home at 1933 S. Downing Street, Denver, CO 80210. There is no obvious way to recite the complex history of this matter that will make it clear, and I will simply elect chronological order.

    Foreclosure proceedings began in March 2007. The holder of the mortgage, Bank of New York Trust Co. N.A. ("Bank"), filed a verified motion for an order authorizing sale in Case No. 07CV11152 in the Denver District Court. The Denver County Public Trustee foreclosure sale was held on August 7, 2007, and the Bank purchased the property for $238,500.00. [#45-2]

1

at 5.  The Bank was issued, and recorded, the deed on January 3, 2008.  *Id.* at 1.  The redemption

period expired on October 22, 2007.

On November 3, 2007 a "Demand for Possession" was posted on the plaintiffs' door by

the Bank.  [#45-3].  The plaintiffs retained possession of the property, and the Bank filed a

Verified Complaint for Unlawful Detainer on November 5, 2007.  [#45-4].  Upon Ms. Dillard's

motion the case was transferred to the Denver District Court.  After a hearing, the Denver

District Court entered a Judgment for Possession and issued a Writ of Restitution in favor of the

Bank on June 19, 2008.  [#45-5].  Ms. Dillard appealed the judgment to the Colorado Court of

Appeals, and the Court of Appeals affirmed the district court's ruling.  [##45-6; 45-9].  On July

21, 2009 Ms. Dillard filed for Chapter 7 Bankruptcy protection in Case No. 09-24506-HRT.

[#45-7].  On October 13, 2009 Ms. Dillard submitted a Petition for Writ of Certiorari to the

Colorado Supreme Court, which was promptly denied.  [#45-8].

On December 1, 2009 the Bank obtained relief from the automatic stay in Ms. Dillard's

bankruptcy case [#45-10] and requested that the Denver District Court reissue a writ of

restitution on December 11, 2009 [#45-11].  The court issued the Writ of Restitution on February

11, 2010, [#45-12] which Ms. Dillard appealed the same day [#45-13].  On February 12, 2010

Ms. Evans filed for Chapter 7 bankruptcy protection in Case No. 10-127410-EEB.  [#45-15].  On

February 16, 2010 Ms. Dillard filed a request for "Injunctive Relief/Stay or Vacate Writ" in the

FED case.  [#45-46].  The Bank filed a "Combined Motion to Strike Defendant's Request for

Injunctive Relief/Stay or Vacate Writ and to Stay Writ of Restitution.  [#45-17].

The Colorado Court of Appeals dismissed the appeal on May 19, 2010 on the grounds

that a writ of restitution is not an appealable order and the Colorado Court of Appeals lacked

jurisdiction.  [#45-21].  On May 13, 2010 the United States Bankruptcy Court issued an order

granting the Bank relief from the automatic stay in Ms. Evans' bankruptcy case. [#45-18].  The Bank received the Writ of Restitution from the district court on June 2, 2010. [#45-22].

So far this recitation is essentially background.  The following facts essentially give rise to the instant dispute.  On June 2, 2010 the Writ of Restitution was served on Ms. Dillard by posting it in a conspicuous place on the premises.  [#45-23].  Ms. Dillard then filed an Emergency Motion for Writ of Execution/Stay/Injunction in Denver District Court, arguing that she had filed an appeal of the judgment issuing the Writ.  [#45-25].  Unaware of the Motion to Stay, Deputy Gregory posted the Denver Sheriff Department Scheduled Notice at the property on June 3, 2010.  [#45-26] at ¶3; [#45-28].  On June 6, 2010 Ms. Dillard filed a "Motion to Vacate Illicit Issuance of Writ dated 6/2/10" in Denver District Court, again arguing that the Writ was improper because the matter was on appeal in the bankruptcy court.  [#45-28].

Deputy Gary Gregory, a member of the Denver Sheriff's Department and employed by the City and County of Denver, arrived at the property at 8:15 a.m. on June 14, 2010 to start the eviction.  Plaintiffs allege that Deputy Gregory announced something to the effect of "pack your Bibles!" upon arriving.  Both Ms. Dillard and Ms. Evans were at the property that morning, but Ms. Dillard left the property before Ms. Evans opened the door for Deputy Gregory.  [#45-14] at 31:3-19.  Between 8:15 a.m. and 8:25 a.m. Deputy Gregory received a telephone call from the Denver Sheriff's Department alerting him that they had received, by fax, the following items from Ms. Evans:  a two page letter; Relief from Stay Cover Sheet from the U.S. Bankruptcy Court, and a Supplemental Order.   [#45-26] at ¶7.  Sergeant Thomas Frank then called Deputy Gregory and instructed him to postpone the eviction until the Denver City Attorney's Office could review the documents.  *Id.* at ¶8.  Deputy Gregory postponed the eviction until 9:40 a.m. when he was then told by Sergeant Frank to proceed.  *Id.* at ¶9-10.

Ms. Evans told Deputy Gregory and Sheriff's Deputy Eric Rosenfeldt that she did not have anywhere to go and did not have any family or friends who could assist her. *Id.* at 11. Deputy Rosenfeldt assured Ms. Evans that she would not be abandoned or left on the street. *Id.* at 12. Sergeant Frank also spoke with Ms. Evans by phone and told her that someone would help her find shelter and store her belongings. [#45-30] at ¶8. The Denver Department of Human Services was called to assist Ms. Evans. *Id.* at ¶9. Stacey Soom with the Department of Human Services arrived at the property at approximately 11:00 a.m. [#45-32] at ¶3. Ms. Soom explained to Ms. Evans that she would be taken to a hotel, and that the 67th Ave. Moving and Storage Inc. moving company would move her belongings and store them in a secure location. *Id.* at ¶3. Since Ms. Soom was not permitted to transport Ms. Evans in her car and Ms. Evans' dog could not go on public transportation, Deputy Rosenfeldt offered to drive Ms. Evans and her dog to the hotel in his squad car. [#45-31] at ¶8.

At 11:15 a.m. Ms. Dillard called Sergeant Frank at the Denver Sheriff's office and told him that she was in front of Judge Wiley [Daniel], and that Sergeant Frank was violating her rights. [#45-30] at ¶10. At 12:30 p.m. Ms. Dillard called again and stated that she was getting a Stay from Courtroom 9 of the Denver District Court. *Id.* at ¶11. Sergeant Frank then called Courtroom 9 to get more information, but there was no answer. *Id.* at ¶12.

Deputy Rosenfeldt and Ms. Evans left the property at approximately 1:08 that afternoon. *Id.* at ¶9. On the way to the hotel Ms. Evans told Deputy Rosenfeldt that a stay of the Writ of Restitution might be coming from the court. *Id.* at ¶12. Deputy Rosenfeldt responded that until the stay was received by the evicting officer it would be best for him to continue to the hotel. *Id.* at ¶13. The eviction was completed by 1:15 p.m. [#45-26] at ¶13.

Denver District Court Judge Sheila Rappaport issued an order on June 14, 2010 addressing Ms. Dillard's Emergency Motion and Motion to Vacate the Writ. [#45-34]. Judge Rappaport found that although the Court of Appeals had found that writ of restitution was not an appealable order, "a motion for reconsideration and supplement thereto are pending before the Court of Appeals; therefore, the Court of Appeals retains jurisdiction until it issues a mandate." *Id.* The court further found that although "the court…has resolved the issue of ownership of the property located at 1933 S. Downing Street, Denver, CO 80210" the court granted Ms. Dillard's request to stay the writ "pending mandate from the Court of Appeals." *Id.*

At 1:24 p.m. Ms. Dillard handed Sergeant Frank the order staying the writ, which Sergeant Frank time-stamped before calling Deputy Gregory to tell him to stop the eviction. *Id.* at ¶13; [#45-26] at ¶14. Sergeant Frank then called Judge Rappaport's chambers to notify the court that the property had already been restored prior to receiving the stay, and the court responded and noted in writing on the order that the "Order is moot at this point as the property has been restored." *Id.* at ¶14; [#45-34].

At 2:00 p.m. Ms. Dillard arrived at the property and demanded that Deputy Gregory return the keys to her. [#45-26] at ¶15. Deputy Gregory informed Ms. Dillard that that 67th Ave. Moving and Storage, Inc. was there to help move and store her belongs and told her the whereabouts of Ms. Evans. *Id.* at ¶16-17. Ms. Dillard did not cooperate with the moving company, and the moving company departed at 2:55 p.m. without removing Ms. Dillard's belongings. *Id.* at ¶18-19.

On June 15, 2010 Deputy Gregory returned a Certificate of Service of Writ of Restitution with the comment: "Property restored prior to receiving stay from court. The Tennant [sic] Patricia Evans was transported to shelter and arrangement made to store the tenant[']s property

which had been removed from the premises."  Ms. Dillard filed a "Motion & Affidavit for

Citation for Contempt of Court & Relief Request" for allegedly violating the court's order

staying the Writ.  Judge Rappaport in Denver District Court denied the motion and found:

> A Citation for Contempt of Court is not valid as the Sheriffs were complying with
> the previous order for Writ of Restitution. …There is no statutory provision for
> compensation as result of the execution of a writ of restitution.  Further, statutory
> law provides that "[t]he officer that executes a writ of restitution and the law
> enforcement agency that employs such officer shall be immune from civil liability
> for any damage to a tenant's personal property that was removed from the
> premises during the execution of the writ."  C.R.S. § 13-40-122(2).

Ms. Dillard filed a Motion to reconsider and clarify the ruling on June 18, 2010 [#45-38] and on

June 21, 2010 filed a Motion to Compel a Ruling on the Motion to Reconsider [#45-39].[1]

Ms. Dillard and Ms. Evans filed the current case on July 25, 2011.  [#1].  Ms. Dillard's

and Ms. Evans' claims, as set out in their Second Amended Complaint [#35], are as follows:  (1)

Illegal Search & Seizure in violation of the Fourth Amendment of the U.S. Constitution,

Colorado Constitution Art. 2 §7, C.R.S. 19-2-504-505, and C.R.S. 16-3-310; (2) Violation of the

Eighth Amendment; (3) Violation of the Fourteenth Amendment; (4) Violation of RICO

(kidnapping) 18 U.S.C. § 1964 (c), C.R.S. 18-3-302; (5) Violation of RICO 18 U.S.C.

§1961(1)(B); (6) Influencing a Public Servant in Violation of C.R.S. 18-8-101, C.R.S. 18-9-306;

(7) Criminal Trespass in violation of C.R.S. 18-4-504; (8) Negligence; (9) Failure to Train and/or

Supervise Employees; (10) Abuse of Process; (11) Willful and Wanton Conduct; (12)

Obstruction of Justice 42 U.S.C. § 1985(2), 18 U.S.C. §1961(1)(B); (13) Commission of

Deceptive Act; and (14) Conspiracy to Interfere with Civil Rights in violation of 42 U.S.C.

§1985.

---

[1] Defendants state that these motions were both denied, but have attached  what appears to be the incorrect court
order [#45-40].  The Court will assume for purposes of this Order that the motions were denied.

Defendants filed a motion on September 5, 2012 seeking summary judgment on all of the plaintiffs' claims.  [#45].  Defendants also filed a motion to stay the proceedings pending determination of the immunity issues [#44].  The Court denied the Motion to Stay and denied any further extensions [#47].  In that Order, the Court also gave plaintiff until October 1, 2012 to file a Response and until October 15, 2012 for defendants to file a Reply.  Plaintiffs filed a Response to the Motion to Stay and the Motion for Summary Judgment on September 6, 2012 [#48].  However, plaintiffs' response was filed on the same day as the Court's Order setting a briefing schedule and did not thoroughly address the issues raised by defendants in their motion for summary judgment.  In their "reply" defendants recognized that plaintiffs' objection and response was likely filed before they had actually received the Motion for Summary Judgment, and therefore did not constitute a real response [#49].  The defendants therefore did not file a reply, assuming that plaintiffs would respond by October 1, 2012.

Plaintiffs filed a Response on October 2, 2012 informing the Court that Ms. Dillard was currently incarcerated, and that Ms. Evans was filing the motion on their behalf [#51].  The Response then incorporated the arguments made in the earlier response [#48] and stated that "Evans will soon file other relevant documents in the upcoming days."  [#51] at ¶5.  Ms. Dillard then filed a Motion for Continuance on October 3, 2012 [#53].  Ms. Dillard states that she is "in the custody and control of the United States Marshall's Office, incarcerated at the Denver Women's' [sic] Facility."  Ms. Dillard also writes that she "will be able to effectively litigate this matter, however there will be times that the incarceration will constrain moment, research, and other procedural duties."  *Id.*  Ms. Dillard does not ask for a continuance of the trial or any particular motion deadline but appears to be asking for a continuance "in general."  Defendants

have subsequently filed a Reply [#54] and a Response opposing plaintiffs' motion to continue [#55].

The Court sympathizes with the difficulties of pursuing a case while one of the plaintiffs is incarcerated, especially when appearing *pro se*.  However, trial is set to commence in this case on October 29, 2012, and because of the closeness of that date the Court set a strict briefing schedule to enable plaintiffs to respond prior to trial.  Now the trial date is rapidly approaching and the deadline set by the Court has passed without a substantive response.  Pro se parties must "follow the same rules of procedure that govern other litigants."  *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (citing *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).  Therefore, the Court will rule on defendants' motion for summary judgment with the briefing and evidence it currently has.

### Standard

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  A fact is material "if under the substantive law it is essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  The Court will examine the factual record and make reasonable inferences therefrom in the light

most favorable to the party opposing summary judgment. *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### Conclusions

Defendants' motion first seeks to dismiss plaintiffs' claims based on the affirmative defenses of absolute and qualified immunity.[2]

<u>Absolute Immunity</u>

Defendants argue that Gregory and Frank are entitled to absolute immunity for their participation in the execution of the Writ of Restitution. Absolute immunity "is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988) (emphasis in original). Absolute immunity may be invoked to shield judges from liability for damages, as well as "those who are integral parts of the judicial process." *Malik v. Arapahoe County Dept. of Social Services*, 987 F.Supp. 868, 872 (D. Colo. 1997) (citing *Butz v. Economou*, 438 U.S. 478, 512 (1978)). The Tenth Circuit has also held that absolute immunity for damages liability is provided to "all persons – governmental or otherwise – who were integral parts of the judicial process." *Valdez v. City & County of Denver*, 878 F.2d 1285, 1288 (10th Cir. 1989).

In *Valdez*, the Tenth Circuit recognized that police officers performing "ministerial functions," such as carrying out a judge's order to remove an individual from the courtroom, are "an important and integral part of the judicial process." *Id.* at 1288-89. In *Snell v. Tunnell* the defendants argued that they were entitled to absolute immunity because "their activities as social workers are intimately associated with the judicial process." 920 F.2d 673, 686 (10th Cir. 1990).

---

[2] Defendants also argue that the claims asserted against Frank and Gregory in their official capacities are equivalent to asserting claims against the City of Denver, and therefore are duplicative. The Court agrees: "An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).

However, the Tenth Circuit found that the social workers in that case were not entitled to qualified immunity, because they functioned in an investigatory capacity.  *Id.* at 691-92.  In contrast, the officers in the current case were not carrying out any investigatory role.  Officers Gregory and Frank were charged with simply executing the order, an arguably "ministerial function."

The Tenth Circuit has held that "just as judges acting in their judicial capacity are absolutely immune from liability under section 1983, officials charged with the duty of executing a facially valid court order enjoy absolute immunity from liability for damages in a suit challenging conduct prescribed by that order."  *Moss v. Kopp*, 559 F.3d 1155, 1163 (10th Cir. 2009) (citing *Turney v. O'Toole*, 898 F.2d 1470, 1472 (10th Cir. 1989)).  However, for an officer acting pursuant to a court order to be entitled to absolute immunity the following factors must be met: "the judge issuing the disputed order must be immune from liability in his or her own rights, the officials executing the order must act within the scope of their own jurisdiction, and the officials must only act as prescribed by the order in question."  *Id.*[3]

First, the judge issuing the order must be entitled to immunity.  A judge has absolute immunity unless he or she was acting in the "clear absence of all jurisdiction."  *Turney*, 898 F.2d at 1474.  A judge will not be found to be acting in clear absence of all jurisdiction even if the action was done in error, done maliciously, in excess of authority, or if the judge committed grave procedural errors.  *Moss*, 559 F.3d at 1163-64.  Here, there is no evidence or allegation that Judge Rappaport acted in clear absence of all jurisdiction when she issued the Writ of Restitution.  Though the Writ was temporarily stayed because of Ms. Dillard's motion to reconsider, that does not demonstrate that Judge Rappaport is not entitled to immunity.  The

---

[3] If the defendants themselves obtain the order in bad faith, immunity does not apply.  *Id.*  That does not apply in the instant case; Deputy Gregory and Sergeant Frank did not themselves obtain the order, but merely obeyed it.

Court of Appeals previously ruled that it lacked jurisdiction to rule on the Writ, but Ms. Dillard filed a motion to reconsider and Judge Rappaport found that jurisdiction remained with the Court of Appeals.  Nonetheless, the "error" in issuing the writ does not prevent the Court from finding that Judge Rappaport was entitled to immunity.  The Supreme Court directs courts that the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).  Writs of restitution are within Judge Rappaport's jurisdiction to issue as a Colorado state court judge in a court of general jurisdiction. Therefore, the Court finds that Judge Rappaport was entitled to absolute immunity and the first factor is met.

The second factor, "[a] key requirement…to the application of quasi-judicial immunity[4] where government officials are executing court orders is the requirement that the order be 'facially valid.'" *Moss*, 559 F.3d at 1164.  Plaintiffs contend that the Bank of New York procured the state court judgment through illegal and improper means, but that does not itself establish that the order was facially invalid.  An order can be "facially valid" even if it is incorrect or erroneous.  The Tenth Circuit has explained that the reason for this is that "[s]tate officials must not be required to act as pseudo-appellate courts scrutinizing the orders of judges, but subjecting them to liability for executing an order because the order did not measure  up to statutory standards would have just that effect." *Id.* at 1165 (citing *Turney*, 898 F.2d at 1473).

Colorado law provides that writs of restitution "may be executed by the county sheriff's office in which the property is located by a sheriff, under sheriff, or deputy sheriff."  C.R.S. § 13-40-122(1).  The statute clearly indicates the legislature's desire for officers such as Gregory and Frank to carry out such orders.  Regardless of the brief stay in the writ, or the success of any

---

[4] Quasi-judicial immunity and Absolute immunity are interchangeable terms and are both used by the Tenth Circuit. *Turney*, 898 F.2d at 1472.

subsequent appeal, an order issued from the Denver District Court for officers to perform a

function with their statutory duties qualifies as "facially valid."  As in *Moss*, the policy behind

absolute immunity dictates that it should be applied here:  "if the orders here were held facially

invalid even though statutory law directs the officials to execute such orders, thereby subjecting

the deputies to potential liability, these deputies and others like them may be much more

reluctant to execute future orders of the judiciary."  *Moss*, 559 F.3d at 1166.  Therefore, this

Court finds that the court order in this case meets the facial validity requirement.

The third requirement is that the officials were acting within the scope of their

jurisdiction.  As discussed above, Colorado statutes permit and direct sheriff's deputies to

execute writs of restitution.  In general, Colorado law also requires that "[t]he sheriff…or deputy,

shall serve and execute, according to law, all processes, writs, precepts, and orders issued or

made by lawful authority and to him directed, and shall serve the several courts of record held in

his county."  C.R.S. § 30-10-515.  Gregory and Frank obeyed both statutes and executed Judge

Rappaport's orders.  There is no evidence that they acted outside of the scope of their

jurisdiction.

Finally, the acts done by the officers must have been prescribed in the court's order.  The

Writ orders the Sheriff of Denver County to "dispossess the above-named Defendants [Vicki R.

Dillard-Crowe, and any and all other occupants] and to restore the Plaintiff [The Bank of New

York] to possession of the premises."  [#45-22].  Plaintiffs contend that the writ was improper,

but the evidence shows that the defendants' actions were within the confines of the court's order.

Defendants took possession of the property, took tenant Ms. Evans to shelter, and had all

personal property removed to storage.  Under this evidence, Gregory and Frank did not exceed

the court's Writ of Restitution.

Further persuading the Court that absolute immunity is proper in this case is the Colorado statute regarding restitution.  The statute provides:

> [t]he officer that executes a writ of restitution under subsection (1) of this section and the law enforcement agency that employs such officer shall be immune from civil liability for any damage to a tenant's personal property that was removed from the premises during the execution of the writ.

C.R.S. § 13-40-122(2).  This indicates an intent by the legislature to provide some degree of immunity to the officers executing the writ.  In an unreported case, the Tenth Circuit has also found that to the extent that the officers acted pursuant to a writ of execution they were entitled to immunity.  *Wilcox v. Magill*, 468 Fed. App'x 849, 852-53 (10th Cir. 2012).

Given this indication, and the application of the factors discussed in *Moss* and *Turney*, the Court finds that Deputy Gregory, Sergeant Frank, and the four John Doe Deputy Sheriffs are entitled to absolute immunity for claims asserted against them in their individual capacities.  As the Court found that the individual defendants are entitled to absolute or quasi-judicial immunity it need not address defendants' qualified immunity argument.  Therefore, summary judgment is granted as to Deputy Gregory, Sergeant Frank, and the four John Doe Sheriff's Deputies.

<u>City and County of Denver</u>

Plaintiffs also bring several claims against the City and County of Denver, and the individual defendants in their official capacities.  Each will be addressed in turn:

*Claim 1: Violation of the Fourth Amendment, Colorado Constitution Art. 2 §7, C.R.S. § 19-2-504-505, C.R.S. § 16-3-310*

Plaintiffs' first cause of action appears to be asserted against the City Attorney's Office and Denver Sheriff's Department, although they are not named defendants in this action. Therefore the Court will address this claim to the extent that it is asserted against the City and County of Denver ("City").

First, plaintiffs assert that the City violated their Fourth Amendment rights under the United States Constitution and Art. 2 §7 of the Colorado Constitution by conducting an illegal search and seizure.  The Supreme Court has held that "a local government may not be sued under §1983 for an injury inflicted solely by its employees or agents.  Instead it is when execution for a government's policy or custom...inflicts the injury...."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 695 (1978).  In *Monell*, the Supreme Court held that the plaintiff must identify a municipal policy or custom that caused the plaintiff's injury.  *Id.* at 694.

> Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.  Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

*Board of County Com'rs of Bryan County, Okla. v. Jill Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).  In order to establish municipal liability under Tenth Circuit law, the plaintiffs must show "(1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged."  *Hollingsworth v. Hill*, 110 F.3d 733, 742 (10th Cir. 1997)(internal citation omitted).

Plaintiffs have not argued in their complaint, nor provided any evidence, that there was a policy or custom that resulted in the violation of plaintiffs' Fourth Amendment Rights.  Therefore the Court will not extend liability to the City.

Both Colorado statutory violations alleged in plaintiffs' first claim are inapplicable in the current matter.  C.R.S. § 19-2-504-505 regulates the issuance of search warrants and searches in juvenile cases.  Neither plaintiff is a juvenile.  C.R.S. § 16-3-310 concerns oral advisements prior

to the search of a vehicle or person.  There are no allegations or evidence that plaintiffs' vehicle or persons were searched during the eviction.

Accordingly, defendants' motion for summary judgment is granted as to plaintiffs' first claim.

### Claim 2: Violation of the Eighth Amendment

Plaintiffs' second claim for relief alleges a violation of plaintiffs' Eighth Amendment rights to be free from "cruel and unusual punishment."  The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  The Cruel and Unusual Punishments Clause "was designed to protect those convicted of crimes."  *Whitley v. Albers*, 475 U.S. 312, 318 (1986).  Neither plaintiff was convicted of a crime on June 14, 2010 when the alleged violations occurred.  Therefore, there can be no Eighth Amendment violation and defendants are granted summary judgment as to plaintiffs' second claim.

### Claim 3: Violation of the Fourteenth Amendment

To the extent this claim is asserted against the City, summary judgment is granted for the same reasons articulated in regard to plaintiffs' first claim.

### Claim 8: Negligence

Under the Colorado Governmental Immunity Act ("CGIA"), plaintiffs cannot bring a negligence claim against the City.  C.R.S.  § 24-20-106.  Plaintiffs' allegation does not fall within any of the enumerated exceptions to sovereign immunity.  Nor have plaintiffs

demonstrated that there is a genuine issue of material fact on the issue of whether the defendants' conduct was willful and wanton.[5]   Therefore, defendants' motion is granted as to claim eight.

> *Claim 9:   Failure to Train/Supervise and Lack of Policies*

As discussed with regard to claim one, to establish municipal liability the plaintiffs must show "(1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Hollingsworth v. Hill*, 110 F.3d 733, 742 (10th Cir. 1997)(internal citation omitted).   In their complaint plaintiffs state that the City had "specific policies for conducting evictions, not making false statements, proffering fabricated evidence and obeying court order."   [#35] at ¶72.   Plaintiffs state that these policies are evidenced by the large number of lawsuits filed against Denver law enforcement and the City.   However, plaintiffs do not provide any evidence of a policy or custom beyond these statements.   Therefore, the Court cannot find that plaintiffs have demonstrated that there is a genuine dispute of material fact on this issue.   Summary Judgment is granted in favor of defendants on plaintiffs' Ninth Claim.

Defendants have established that all claims asserted against the City lack a genuine dispute of material fact.   Summary judgment is proper on all plaintiffs' remaining claims.

**Order**

Accordingly, the Court orders that defendants' Motion for Summary Judgment [#45] is GRANTED.   The Court enters its final written judgment dismissing this civil action and all claims therein with prejudice.   Plaintiffs' Motion for Continuance [#53] is DENIED as MOOT. Defendants are awarded their costs to be taxed by the Clerk of the Court pursuant to Fec. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

---

[5] Plaintiffs' Claim 11 asserts a separate claim for "willful and wanton conduct." [#35] at ¶84-86.   The Tenth Circuit does not recognize such independent claim.   Therefore, the Court has interprets Claim 11 as an argument that there is sufficient evidence of willful and wanton conduct to overcome the application of the CGIA.

DATED this 18th day of October, 2012.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge